**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Margaret Trevino,

Plaintiff,

v.

AAA Insurance Company, et al.,

Defendants.

No. CV-25-02287-PHX-DWL

**ORDER**

Margaret Trevino ("Plaintiff") sued CSAA General Insurance Company ("Defendant") for failing to pay underinsured motorist benefits. (Doc. 1-3 at 4-9.) However, after the case was removed to federal court, Plaintiff essentially stopped participating—she did not provide initial disclosures, respond to written discovery requests, appear for her deposition, disclose experts, or engage in court-ordered settlement negotiations. As a result, Defendant has moved for summary judgment under Rule 56 or, alternatively, to dismiss for failure to prosecute under Rule 41. (Doc. 18.) The motion is now fully briefed. (Docs. 21, 22.) For the reasons that follow, this action is dismissed without prejudice for failure to prosecute under Rule 41.[1]

**BACKGROUND**

Defendant "issued an automobile policy of insurance, identified as Policy Number AZSS211886298, to Plaintiff, with underinsured motorist coverage in the amount of

[1] This conclusion renders it unnecessary to address whether summary judgment should be granted under Rule 56.

$100,000.00 for each person and $300,000.00 for each occurrence." (Doc. 1-3 at 5 ¶ 7; Doc. 4 at 2 ¶ 7.)

On or about July 12, 2024, "Plaintiff was involved in a motor vehicle collision that was caused by the negligence of uninsured motorist, Marlon Demond Juniel." (Doc. 1-3 at 5 ¶ 8; Doc. 4 at 2 ¶ 8.) At some point thereafter, Plaintiff made an underinsured motorist claim to Defendant. (Doc. 1-3 at 6 ¶ 13; Doc. 18 at 1-2.)

On February 7, 2025, Plaintiff sued Defendant in Maricopa County Superior Court. (Doc. 1-3 at 10-15.) Plaintiff's complaint was signed by Steven Jones ("Jones") of Morgan & Morgan Arizona, PLLC ("Morgan & Morgan"). (*Id.* at 15.)

On April 23, 2025, Plaintiff filed an amended complaint in Maricopa County Superior Court. (*Id.* at 4-9.) Plaintiff's amended complaint was again signed by Jones. (*Id.* at 9.) The amended complaint asserts claims for breach of contract, bad faith, and underinsured motorist benefits. (*Id.* at 6-8 ¶¶ 21-34.)

On May 20, 2025, Javier Alatorre ("Alatorre"), also of Morgan & Morgan, filed a notice of appearance on behalf of Plaintiff. (*Id.* at 2-3.)

On June 3, 2025, defense counsel sent correspondence to Jones and Alatorre advising, among other things, that Defendant intended to remove the case to federal court. (Doc. 18-2 at 2.)

On June 4, 2025, Alatorre sent correspondence to defense counsel indicating that he would be representing Plaintiff and providing his contact information and his paralegal's contact information. (Doc. 18-3 at 2-3.)

On June 30, 2025, Defendant removed the case to federal court. (Doc. 1.)

On July 2, 2025, Defendant filed its answer. (Doc. 4.)

On August 15, 2025, Defendant provided Rule 26 initial disclosures to Plaintiff. (Doc. 18-4.)

On August 19, 2025, the parties filed a joint Rule 26(f) case management report. (Doc. 9.) The joint report identified Alatorre as "Counsel for Plaintiff." (*Id.* at 1.)

On August 20, 2025, the Court entered a Case Management Order ("CMO"). (Doc.

10.) The CMO set forth various deadlines, including, among other things, a September 3, 2025 deadline for initial disclosures, a December 1, 2025 deadline for good-faith settlement talks, a December 15, 2025 deadline for Plaintiff to provide expert disclosures, and an April 15, 2026 deadline to complete fact discovery. (*Id.*) The CMO also warned: "The Deadlines Are Real. The Court intends to enforce the deadlines set forth in this [CMO], and the parties should plan their litigation activities accordingly." (*Id.* ¶ 12.) The CMO further warned: "Dismissal for Failure to Meet Deadlines. The parties are warned that failure to meet any of the deadlines in this [CMO] or in the Federal or Local Rules of Civil Procedure without substantial justification may result in sanctions, including dismissal of the action or entry of default." (*Id.* ¶ 15.)

On November 11, 2025, defense counsel sent correspondence to Jones and Alatorre. (Doc. 18-5.) In that correspondence, defense counsel noted that "Plaintiff's Initial Disclosure [was] now over two months overdue." (*Id.* at 2.) Defense counsel requested Plaintiff's initial disclosures "by no later than Friday, November 21, 2025." (*Id.*) Separately, defense counsel sought "to move forward with scheduling the Plaintiff's deposition" and asked Plaintiff's counsel to respond with their availability by Wednesday, November 19, 2025. (*Id.*) Defense counsel advised that if he did not hear from Plaintiff's counsel by November 19, 2025, he would notice the deposition "based on [his] calendar only." (*Id.*) Additionally, defense counsel noted that "the Court has ordered that the parties are to engage in good faith settlement discussions by December 1, 2025" and asked for Plaintiff's counsel's availability "for a telephone conference to discuss settlement negotiations." (*Id.*) Finally, defense counsel attached Defendant's First Set of Interrogatories and Requests for Production. (*Id.* at 3. *See also* Docs. 18-6, 18-7.)

On November 26, 2025, defense counsel wrote to Jones and Alatorre because he had "not received any response from [Plaintiff's counsel] regarding the information [he] raised in [his] November 11, 2025 letter." (Doc. 18-8 at 2.) Defense counsel stated that Plaintiff's initial disclosures remained "overdue" and that he had not heard from Plaintiff's counsel about scheduling Plaintiff's deposition. (*Id.*) Defense counsel "demand[ed] that

[Plaintiff's counsel] provide the Plaintiff's Initial Disclosure Statement by no later than December 5, 2025." (*Id.*) Defense counsel also "attached . . . a Notice of Deposition of [Plaintiff]" and noted that defense counsel had "scheduled this deposition for Tuesday, December 16, 2025 at 9:30 a.m. at [his] office" and had "chosen this date based on [his] own calendar since [Plaintiff's counsel] did not respond to [his] November 11, 2025 letter." (*Id.*) Defense counsel also reiterated his request "to discuss engaging in good faith settlement discussion by the Court-ordered deadline of December 1, 2025." (*Id.*)

That same day, Defendant filed a notice of deposition for Plaintiff. (Doc. 13.) The notice listed the deposition date as December 15, 2025. (*Id.* at 1.)

On December 1, 2025, Jones filed a notice of appearance for himself and notice of withdrawal for Alatorre. (Doc. 14.) The notice explained that Alatorre had "disassociate[d] from Morgan [&] Morgan." (*Id.* at 1.) That same day, Jones sent correspondence to defense counsel indicating that he would be representing Plaintiff and providing his contact information and his paralegal's contact information. (Doc. 18-9.) This letter mirrored the letter sent by Alatorre on June 4, 2025. (*Compare* Doc. 18-3 *with* Doc. 18-9.)

On December 8, 2025, the parties did not file a joint report on settlement talks as required by paragraph 11 of the CMO. (Doc. 10 ¶ 11.) Instead, on December 8, 2025, Defendant filed "Defendant's Report on Settlement Talks." (Doc. 15.) Defendant explained that since the lawsuit had been filed, there had "been no further settlement talks . . . despite [defense counsel's] request to Plaintiff's counsel for a telephone conversation to discuss settlement" on November 11 and 26, 2025. (*Id.* at 1.)

On December 15, 2025, defense counsel emailed Jones and others to "follow up to [his] 11/11/25 and 11/26/26 letters." (Doc. 18-10 at 2.) Defense counsel stated that Plaintiff's "deposition [was] scheduled for tomorrow" but that Morgan & Morgan "ha[d] informed [him] that it [was] not on [Plaintiff's counsel's] calendar." (*Id.*) Defense counsel "reluctantly" agreed to "reschedul[e] this deposition" and asked Jones which of several proposed dates would work. (*Id.*) Defense counsel asked for a response by Wednesday,

December 17, 2025, "[o]therwise, [defense counsel] [would] pick one of these dates and issue the amended notice of deposition." (*Id.*) Finally, defense counsel reiterated that he "ha[d] still not received the [P]laintiff's initial disclosure statement" and asked for it by December 19, 2025. (*Id.*)

On December 18, 2025—presumably after Jones did not respond to defense counsel's December 15, 2025 email—Defendant filed an amended notice of deposition, rescheduling Plaintiff's deposition for January 5, 2026. (Doc. 16.)

On January 5, 2026, Brenden Leader ("Leader") of Morgan & Morgan filed a notice of appearance on behalf of Plaintiff. (Doc. 17.) That same day, "Plaintiff and her attorneys failed to appear for her . . . deposition." (Doc. 18-1 ¶ 3.)

On February 20, 2026, Defendant filed the pending motion for summary judgment, or alternatively, for dismissal. (Doc. 18.)[2]

On March 23, 2026, the parties stipulated to a seven-day extension for Plaintiff to respond. (Doc. 19 at 1.) The stipulation provided:

> The case has been assigned within the Morgan & Morgan . . . law firm to attorney Daniel Henry III, Esq. [("Henry")] who is currently scheduled to be admitted to practice in the U.S. District Court on April 7, 2026. Prior to his knowledge of Defendants Motion, [Henry] was preparing for a trial . . . which was held March 16, 2026, through March 19, 2026. Counsel has been preparing for this trial for several weeks before the actual trial.

(*Id.* at 1-2.) That same day, the Court granted the stipulation. (Doc. 20.)[3]

On March 27, 2026, Plaintiff filed her response to the pending motion. (Doc. 21.) That response was signed by Jones. (*Id.* at 5.)

On April 7, 2026, Defendant filed its reply. (Doc. 22.) As of that date, Plaintiff had still "not provided any disclosures or responses to written discovery." (Doc. 22-1 ¶ 5.)

On June 5, 2026, Ancil (Brent) Sewell ("Sewell") of Morgan & Morgan appeared on behalf of Plaintiff. (Doc. 23.)

---

[2] Defendant's request for oral argument is denied because the issues are fully briefed and oral argument will not aid the decisional process. *See* LRCiv. 7.2(f).

[3] To date, Henry has not appeared in this case.

On July 1, 2026, Plaintiff filed a notice that Jones is "disassociated as counsel of record" and that Sewell "is the attorney of record for Plaintiff." (Doc. 24 at 1.)

As of the date of this order, Jones had received a Notice of Electronic Filing ("NEF") through the Court's CM/ECF system for every docket filing in this case.[4]

**DISCUSSION**

I. Legal Standard

"Rule 41(b) of the Federal Rules of Civil Procedure provides that 'if the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.'" *Novak v. CoreCivic*, 2019 WL 13214453, *1 (D. Ariz. 2019). *See also Marroquin v. Fernandez-Carr*, 2018 WL 347726, *3 (D. Ariz. 2018) ("Rule 41(b) allows a court to dismiss an action for failure to prosecute, failure to comply with the Federal Rules of Civil Procedure, failure to comply with the court's local rules, or failure to comply with court orders.").

When determining whether to dismiss a case for failure to prosecute or for failure to comply with court orders, courts consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992), as amended (May 22, 1992). *See also Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988). Dismissal is proper where "at least four factors support dismissal, . . . or where at least three factors 'strongly' support dismissal.'" *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (cleaned up).[5]

---

4 Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be question." Having reviewed the NEFs for the docket entries in this case, the Court takes judicial notice of the fact that Jones received a NEF through the Court's CM/ECF system for Docs. 1-24. *See, e.g.*, *Hastings v. U.S. Postal Serv.*, 2017 WL 2936781, *1 n.2 (S.D. Cal. 2017) (taking judicial notice of NEFs); *Nastrom v. JPMorgan Chase Bank, N.A.*, 2013 WL 245734, *4 (E.D. Cal. 2013) (same).

5 Although Rule 37 also potentially authorizes the imposition of a dismissal sanction for failing to provide Rule 26(a) disclosures, failing to appear for a deposition, and/or failing to comply with a discovery order, Defendant only invokes Rule 41 as the basis for

II. The Parties Arguments

Defendant seeks either a grant of summary judgment under Rule 56 or the entry of a dismissal sanction under Rule 41. (Doc. 18.) As for the latter, Defendant argues that "[t]rial courts are granted great discretion to dismiss an action under Rule 41(b) where, as here, Plaintiff fails to prosecute or to comply with these rules or a court order." (*Id.* at 7, cleaned up). Defendant argues that the public's interest in expeditious resolution of litigation and the Court's need to manage its docket both weigh in favor of dismissal. (*Id.*) Defendant argues that the risk of prejudice also weighs in favor of dismissal, because "Plaintiff's failure to disclose even the most basic information or attend her deposition has deprived Defendant . . . of the ability to effectively depose any of her treating physicians or retain any necessary rebuttal experts" and "unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale." (*Id.*, cleaned up.) Next, Defendant argues that the availability of less drastic sanctions is, at best, neutral because "[u]ndoubtedly the Court could order Plaintiff to do that which it has already ordered her to do but, given the history of this case, there appears to be little to no likelihood of compliance." (*Id.*) Defendant acknowledges that the public policy favoring disposition on the merits "weighs in favor of refusing to dismiss" but emphasizes that "Plaintiff has done absolutely nothing to move her claims forward after submitting the Rule 26(f) Joint Case Management Report," "has not provided her initial disclosure statement," "has not participated in settlement discussions," "has not disclosed any expert witnesses," "has not responded to Defendant's written discovery," and has "failed to appear (twice) for her deposition." (*Id.* at 8.) Defendant emphasizes that it, in contrast, "did not sit back and allow deadlines to pass, but rather sent two letters and an email to Plaintiff's attorneys regarding the issues," yet "[t]he only response was what appears to be a 'canned' introduction letter, which did not address anything of substance." (*Id.*) Accordingly,

---

its request for a dismissal sanction. (Doc. 18 at 7-8.) The references in Defendant's motion to Rule 37, in contrast, are limited to requests for an expert-exclusion sanction (which request is rendered moot by the grant of Defendant's request for a Rule 41 dismissal sanction) and for attorneys' fees (which is addressed in a later portion of this order).

Defendant argues that the "Court should dismiss Plaintiff's claims in the exercise of its discretion." (*Id.*)

In response, Plaintiff argues that her "new attorney recently took over this case and is actively trying to amend the mismanagement by prior counsel," who "abruptly left the firm, leaving his cases in a state of disarray and confusion." (Doc. 21 at 1-2.) Plaintiff argues that her "new counsel is waiting to be sworn into Federal Court, with the admission ceremony scheduled for April 7, 2026." (*Id.* at 2.) Plaintiff also argues that "[w]hile there have been several missed deadlines, these issues can be amended by Plaintiff issuing a disclosure statement, answering discovery, disclosing experts, and conducting a deposition of Plaintiff." (*Id.*) "Plaintiff understands the seriousness of missed deadlines" but argues that "prior counsel is not an indication of how the case will be handled going forward." (*Id.*) "Plaintiff proposes an extension to allow outstanding items to be completed before issuing such a serious consequence as a dismissal with prejudice." (*Id.*) Alternatively, "if the Court is to dismiss this case, Plaintiff requests a dismissal without prejudice so a lawsuit can be refiled and properly prosecuted, as it is still within the statute of limitations to file a bad faith and breach of contract lawsuit." (*Id.*) Citing an out-of-circuit district court case, Plaintiff argues that "the sanction of dismissal is a drastic penalty which should be imposed only in extreme circumstances" and "require[s] a finding of willfulness, bad faith, or fault." (*Id.* at 3, cleaned up.) Plaintiff argues that "Defendant is not prejudiced by any of Plaintiff's prior counsel's mismanagement of this case" and that "[a]ll of the issues of this case can be cured by Plaintiff answering discovery, issuing a disclosure statement, disclosing experts, and sitting for a deposition." (*Id.* at 3-4.) Plaintiff also argues that "Defendant is not prejudiced as there is no trial date set." (*Id.* at 4.) Next, Plaintiff argues "all of Plaintiff's previous counsel's missed deadlines arose from excusable neglect, not malicious intent" because "Plaintiff's previous attorney left the firm and neglected this case in the process." (*Id.*) Plaintiff argues that she "should not be punished with the severe penalty of losing her only opportunity to be made whole because her attorney abruptly left the law firm she chose." (*Id.*) Plaintiff also argues that "[o]ther sanctions are available and

Plaintiff's prior counsel's management of this case does not rise to the level of warranting dismissal with prejudice." (*Id.*)

In reply, Defendant argues that "[r]ather than contest any of [Defendant's] facts, Plaintiff's attorney chooses to plead 'excusable neglect' caused by 'mismanagement' by an unnamed 'prior counsel' or 'previous attorney.'" (Doc. 22 at 2.) "Given the focus on 'prior counsel's mismanagement,'" Defendant argues that "the Court should take judicial notice that Plaintiff's 'new attorney' (Mr. Jones) not only signed Plaintiff's Complaint and Amended Complaint, but also was copied on the Court's emails" for several "docket entries up to and including the filing of [Defendant's] Motion." (*Id.* at 2-3, citations omitted.) Defendant also "note[s] that several others associated with the Morgan & Morgan law firm were also copied, yet Plaintiff's attorney has not provided any admissible evidence as to what tasks he—or other members of the firm—had performed in order to move the case along and comply with the Rules and this Court's specific order." (*Id.* at 3.) Next, Defendant argues that "Plaintiff's attorney never defines excusable neglect, nor does he provide any admissible evidence to support such a claim." (*Id.*) Defendant argues that "Plaintiff's attorney has failed to submit any declaration or affidavit to establish any of the pertinent circumstances that he claims justify denial of [Defendant's] Motion," and although Plaintiff claims that the issues can be resolved by "issuing a disclosure statement, answering discovery, [and] disclosing experts," Plaintiff "has STILL not provide ANY disclosure, ANY discovery responses, or ANY expert reports." (*Id.* at 3-4.) Next, Defendant argues that to the extent Plaintiff contends she "should not be punished with the severe penalty of losing her only opportunity to be made whole because her prior attorney abruptly left the firm she chose," the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 395 (1993), "rejected that logic." (*Id.* at 4.) Defendant argues that "[t]here is no admissible evidence of mistake," "no admissible evidence of inadvertence," and "no admissible evidence of any force outside the control of Plaintiff or her attorneys." (*Id.*) "Looking to the specific *Pioneer* factors," Defendant argues that "Plaintiff's position fails." (*Id.*) As for the first *Pioneer* factor, Defendant argues the

"danger of prejudice" to it "is substantial" because, over a year since filing this action, "Plaintiff's attorneys have made no disclosure," "have not responded to any written discovery requests," "have failed to appear for two deposition settings," and "have responded to defense counsel's communications with canned letters extolling their desire to assist in keeping the claim moving to resolution." (*Id.* at 4-5.) Defendant argues that "[w]ith each passing week, memories dim, potential witnesses may relocate, and documents may get destroyed or misplaced," and so "[t]he first [*Pioneer*] factor weighs heavily in favor of imposing significant sanctions." (*Id.* at 5.) As for the second *Pioneer* factor, Defendant argues it favors dismissal because "with only a few days of discovery left, Plaintiff still has not provided any disclosure or discovery responses," and this "significant delay would effectively place this case in the exact position it was almost a year ago," requiring the CMO to be "rewritten entirely." (*Id.*) As for the third *Pioneer* factor, the reason for the delay, Defendant argues that "the circumstances are still unclear given the absence of an explanation by the only people with knowledge, namely Plaintiff's attorneys." (*Id.*) Defendant also argues that Plaintiff's response "sheds no light on the true facts about how not one, not two, not three, but as many as four to six of the firm's employees repeatedly missed deadlines," and so "[a]t best for Plaintiff, this factor is neutral." (*Id.*) Defendant also argues that "whatever the cause, it is likely within the control of Plaintiff and/or his attorneys." (*Id.*) As for the fourth *Pioneer* factor, Defendant argues that "whether Plaintiff or her attorneys were acting in good faith is an unknown" and that "Plaintiff's attorneys have failed to provide any admissible evidence regarding the presence or absence of good faith." (*Id.* at 5-6.) Defendant argues that "[t]he Court should preclude Plaintiff from utilizing any testimony of witness[es] not properly disclosed," and that "[w]ithout that necessary evidence, the Court must grant summary judgment." (*Id.* at 6.) Alternatively, Defendant reiterates that dismissal under Rule 41 is appropriate. (*Id.*)

III. <u>Analysis</u>

This case presents a particularly egregious example of a failure to prosecute and failure to follow court orders. Plaintiff did not show up for her deposition (even after it

was rescheduled), did not disclose any experts, did not respond to written discovery requests, did not comply with the settlement-discussion deadline in the CMO, ignored communications from defense counsel, and still has not bothered to provide her initial disclosures. Nor has Plaintiff offered a compelling justification for these failures—instead, her various attorneys from the same law firm essentially attempt to blame each other. The relevant factors under Rule 41 cut decisively in favor of dismissal under these circumstances. Additionally, to the extent Plaintiff's response brief is a request to amend the deadlines in the CMO, that request lacks merit.

A. **Expeditious Resolution And Docket Management**

As noted, "[t]he Court considers five factors when determining whether to dismiss a case for failure to prosecute or for failure to comply with court orders." *Hyatt v. Velocity Portfolio Grp.*, 2024 WL 1603473, *1 (D. Ariz. 2024). The first two factors are "the public's interest in expeditious resolution of litigation" and "the court's need to manage its docket." *Id.* (quoting *Ferdik*, 963 F.2d at 1260-61). Those factors "favor the imposition of sanctions in most cases . . . ." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

Here, the first factor weighs in favor of dismissal. *Yourish*, 191 F.3d at 990 ("As we have indicated before, the public's interest in expeditious resolution of litigation always favors dismissal."). Similarly, Plaintiff's failure to comply with the CMO, make initial disclosures, disclose experts, respond to discovery, engage in good faith settlement talks, and appear for her deposition "has frustrated the Court's ability to manage its docket." *Higgins v. Haubert*, 2023 WL 5095305, *2 (D. Ariz. 2023) (second factor weighed in favor of dismissal where the plaintiffs failed "to respond to dispositive motions or show up for properly noticed depositions"). *See also Marroquin*, 2018 WL 347726 at *4 (where, among other things, the plaintiff "failed to serve initial disclosures," "never responded or requested additional time to respond" to discovery requests, and "failed to appear for his . . . deposition," the second factor weighed in favor of dismissal because "the Court cannot manage this case and its docket if Plaintiff refuses to comply with its Scheduling Order or participate in discovery"). Indeed, at this point, if the Court did not dismiss this action, the

entire CMO would need to be rewritten and this case would virtually begin anew, more than a year after it was filed.

B. **Risk Of Prejudice To Defendant**

Plaintiff's failure to provide her initial disclosures or her expert disclosures, respond to discovery requests, and appear for her deposition creates a risk of prejudice to Defendant. *See, e.g.*, *Wanderer*, 910 F.2d at 656 ("Here, . . . the failures of the defendants to appear at their depositions, which were compounded by repeated noncompliance with court orders to produce documents constituted a clear interference with the plaintiffs' ability to prove the claims and to obtain a decision in the case. The existence of prejudice is palpable."); *Higgins*, 2023 WL 5095305 at *2 ("Regarding the third factor, Plaintiffs' failure to appear for their depositions creates a significant risk of prejudice to Defendants."); *Parker v. Shaw & Lines, LLC*, 2010 WL 1640963, *2 (D. Ariz. 2010) ("It is axiomatic that, as time passes, it becomes harder for Defendants to defend the action as witnesses become unavailable and memories fade.").

In *Marroquin*, the defendants argued that the plaintiff, among other things, "failed to serve initial disclosures," "never responded or requested additional time to respond" to discovery requests, and "failed to appear for his . . . deposition." 2018 WL 347726 at *4. The court held that the plaintiff "must rebut a presumption of prejudice that arises from [his] failure to prosecute with a non-frivolous excuse for the delay." *Id.* *See also id.* ("A Rule 41(b) dismissal must be supported by a showing of unreasonable delay.") (cleaned up). The court concluded that the plaintiff's "proffered reasons [we]re unpersuasive" and that the third factor therefore weighed in favor of dismissal. *Id.*

Here, too, Plaintiff's proffered reasons for delay are unpersuasive. Plaintiff confusingly and vaguely attempts to shift the blame onto "prior counsel's mismanagement of the case." (Doc. 21 at 3.) Plaintiff argues that her "new attorney recently took over this case and is actively trying to amend the mismanagement of prior counsel," who "abruptly left the firm, leaving his cases in a state of disarray and confusion." (*Id.*at 1-2.) Plaintiff also argues that her "new counsel is waiting to be sworn into Federal Court." (*Id.* at 2.)

However, Plaintiff fails to specify the identity of her "prior counsel" and "new counsel." It appears that Plaintiff is referring to Alatorre as her "prior counsel" who purportedly mismanaged her case and then abruptly left the firm.[6] But it remains unclear whether Plaintiff's "new counsel" is (1) Jones, who signed Plaintiff's response brief (Doc. 21 at 5);[7] (2) Leader, who appeared in this case on January 5, 2026 (Doc. 17); (3) Sewell, who appeared in this case on June 5, 2026 (Doc. 23); or (4) Henry, who was the subject of the parties' stipulation to extend Plaintiff's time to respond to the pending motion but has not yet appeared in this case (Doc. 19). Given that Jones signed Plaintiff's response brief, Defendant's reply logically assumes that Jones is Plaintiff's "new attorney." (Doc. 22 at 2.) It appears, however, that Plaintiff was referring to *Henry* as her "new counsel" because she argues in her response brief that her "new counsel is waiting to be sworn into Federal Court" and the parties' stipulation to extend Plaintiff's time to respond to Defendant's motion refers to Henry as the attorney who is taking over Plaintiff's case and is pending admission to federal court. (Doc. 21 at 2; Doc. 19 at 1.)

Assuming that Alatorre is Plaintiff's "prior counsel" and Henry is Plaintiff's "new counsel," Plaintiff has provided no explanation why any of her other attorneys—Jones, Leader, or Sewell, all of whom have appeared at some point in this case and all of whom work at the same law firm as Henry—failed to make any effort to prosecute this case, or at the very least, seek extensions of deadlines pending Henry's federal court admission. Although Jones did not formally appear in this case until December 1, 2025 (Doc. 14), he had been involved since its inception—indeed, he is the attorney who signed Plaintiff's complaint and amended complaint in state court. (Doc. 1-3 at 9, 15.) Moreover, although Jones had not yet made an appearance at the time that initial disclosures were due on

---

[6] Plaintiff's "prior counsel" presumably does not refer to more than one attorney because Plaintiff refers to her prior counsel "abruptly [leaving] the firm, leaving *his* cases in a state of disarray and confusion." (Doc. 21 at 1-2, emphasis added.) Additionally, it seems most plausible that Plaintiff is referring to Alatorre, specifically, as her "prior counsel" because Doc. 14 indicates that Alatorre withdrew as counsel in this case because he "disassociate[d] from Morgan [&] Morgan." (Doc. 14 at 1.)

[7] Jones "disassociated as counsel of record for Plaintiff" on July 1, 2026—months after Plaintiff responded to the pending motion. (Doc. 24.)

September 3, 2025, he nevertheless received a NEF through the Court's CM/ECF system for every docket entry after this case was removed to federal court—including, most important, the CMO. Throughout this matter, Jones was also copied on correspondence from defense counsel regarding, among other things, Plaintiff's continued failure to provide initial disclosures. (*See, e.g.*, Docs. 18-5, 18-8, 18-10.) Yet at no point did Jones ensure that Plaintiff's initial disclosures were timely provided to Defendant, seek to belatedly provide initial disclosures to Defendant once he appeared in this case, or seek to amend the CMO deadline regarding the deadline for initial disclosures.

Jones also filed a notice of appearance for himself and notice of withdrawal for Alatorre on December 1, 2025 (Doc. 14)—one week *before* the deadline to submit a joint report on settlement discussions and two weeks *before* the deadline to submit expert disclosures. Even after appearing, Jones failed to engage in settlement discussions and failed to file the required joint report on settlement talks. Jones also failed to disclose any experts. Plaintiff has provided no explanation why Jones, after appearing in this case, failed to meet these deadlines.

What's more, on November 26, 2026, Jones received correspondence from defense counsel regarding the scheduling of Plaintiff's deposition for December 16, 2025. (Doc. 18-8 at 2.) The notice of deposition filed that same day, however, listed the deposition date as December 15, 2025. (Doc. 13.) On December 15, 2025 (two weeks after Jones appeared in this case), defense counsel wrote to Jones and others stating that Plaintiff's deposition was "scheduled for tomorrow" but that Jones's office had "informed [him] that it [was] not on [their] calendar." (Doc. 18-10 at 2.) Accordingly, defense counsel "reluctantly reschedul[ed] th[e] deposition," asking Jones which of four dates would work best and requesting a response by December 17, 2025, otherwise defense counsel would "pick one of these dates and issue the amended notice of deposition." (*Id.*) On December 18, 2025, defense counsel filed an amended notice of deposition rescheduling Plaintiff's deposition for January 5, 2026. (Doc. 16.)[8] Plaintiff and Jones then failed to appear for her

[8] The Court presumes this date was unliterally chosen by defense counsel based on

rescheduled deposition. Nor did Leader appear for the deposition, even though he filed a notice of appearance on behalf of Plaintiff (Doc. 17) that same day.

Plaintiff has failed to explain how any of this conduct was reasonable. Plaintiff's attempt to shift blame onto Alatorre is unavailing where Jones was involved in the case from its inception, received NEFs via the Court's CM/ECF system for all docket entries, and failed to comply with any CMO deadlines after formally appearing. Plaintiff also fails to explain why any of the other attorneys who appeared on her behalf (i.e., Leader and Sewell) took no action.

Plaintiff's only other excuse for these failures is that Henry was "waiting to be sworn into Federal Court" on April 7, 2026. (Doc. 21 at 2.) But at no point did Jones, or any other attorney for Plaintiff, seek an extension of deadlines or amendment of the CMO to account for Henry's pending admission. Under these circumstances, Plaintiff's excuses are frivolous and unreasonable.

C. **Public Policy Favoring Disposition Of Cases On Their Merits**

"[T]he fourth [factor] cuts against a default or dismissal sanction." *Wanderer*, 910 F.2d at 656. *See also Novak*, 2019 WL 13214453 at *2 ("The fourth factor, as always, weighs against dismissal."); *Jacobsen v. Penzone*, 2018 WL 10399294, *1 (D. Ariz. 2018) (same).

D. **Availability Of Less Drastic Sanctions**

"Rule 41(b) provides that a dismissal for failure to prosecute operates as an adjudication upon the merits '[u]nless the dismissal order states otherwise.'" *Novak*, 2019 WL 13214453 at *2. The CMO expressly provides that "[t]he deadlines are real" and that the "Court intends to enforce the deadlines set forth in this [CMO]." (Doc. 10 ¶ 12, cleaned up.) The CMO further provides that "[t]he parties are warned that failure to meet any of the deadlines in this [CMO] or in the Federal or Local Rules of Civil Procedure without substantial justification may result in sanctions, including dismissal of the action or entry of default." (*Id.* ¶ 15.) Despite these clear warnings, Plaintiff failed to provide her initial

---

Jones's failure to respond to defense counsel's December 15, 2025 email.

disclosures, confer with Defendant regarding settlement, disclose experts, answer discovery requests, or appear for her deposition (even after it was rescheduled). This conduct violated both the Federal Rules and the CMO and constitutes a failure to prosecute. *Higgins*, 2023 WL 5095305 at *2 (fifth factor supported dismissal where "Plaintiffs were 'specifically advised' at the outset of the case 'that failure to prosecute, to comply with court orders, or to comply with the Local and Federal Rules may result in dismissal of all or part of this case, default, imposition of sanctions, or summary disposition of matters pending before the Court'").

The Court has considered whether there are any adequate, less drastic sanctions available and concludes that dismissal without prejudice is the only realistically available less drastic sanction. *Id.* ("The Court has considered whether less drastic sanctions could be appropriate in this case . . . [and] concludes that they would not be appropriate sanctions here in light of Plaintiffs' lengthy track record of non-participation and non-compliance. The Court will dismiss without prejudice, which is the only less drastic sanction appropriate here."). Although the Court is sympathetic to Defendant's argument that any dismissal under Rule 41 should be with prejudice (Doc. 22 at 7), that outcome would be disproportionate to the harm—particularly in light of the determination in Part IV *infra* that Defendant should be allowed to recover its attorneys' fees and costs—and in tension with the public policy favoring disposition of cases on the merits. Accordingly, this action is dismissed without prejudice. *See, e.g.*, *Mohammed v. Am. Airlines*, 2024 WL 4145075, *1 (D. Ariz. 2024) (concluding that "a without-prejudice dismissal [was] the only feasible alternative to a with-prejudice dismissal"); *Hyatt*, 2024 WL 1603473 at *1 ("[D]ismissal *without* prejudice is a less drastic alternative to dismissal *with* prejudice, and the Court therefore elects to dismiss this action without prejudice."); *Novak*, 2019 WL 13214453 at *2 (similar); *Jacobsen*, 2018 WL 10399294 at *2 (similar).

E. **Plaintiff's Request To Extend CMO Deadlines**

Plaintiff argues that "all of [her] previous counsel's missed deadlines arose from excusable neglect, not malicious intent" and that she "should not be punished with the

severe penalty of losing her only opportunity to be made whole because her prior attorney abruptly left the law firm she chose." (Doc. 21 at 4.) Plaintiff also argues that "[a]ll of the issues in this case can be cured by Plaintiff answering discovery, issuing a disclosure statement, disclosing experts, and sitting for a deposition." (*Id.* at 3-4.)

To the extent these arguments are intended to function as a request to extend the deadlines in the CMO, an initial problem is that Plaintiff does not identify the rule that would authorize the relief she seeks. And although Plaintiff apparently assumes that an extension of the CMO deadlines would cure all of her earlier transgressions in this case, Plaintiff ignores that she makes this request in response to a motion that, at least in part, seeks summary judgment and that the purpose of the requested extension would be to allow her to gather evidence that (presumably) could then be used to oppose summary judgment: "An extension of the missed deadlines would allow Plaintiff to complete all the outstanding discovery requests, depositions, disclosure statements, and expert disclosures. Then, this case could get back on track." (*Id.* at 4.) As a result, the request arguably implicates Rule 56(d)(2), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." But any request for relief under Rule 56(d)(2) is a non-starter because Plaintiff has not provided the required "affidavit or declaration." *Fed. Trade Comm'n v. Noland*, 2021 WL 4078732, *2 (D. Ariz. 2021) ("[T]he motion is procedurally deficient . . . [because] the Individual Defendants have failed to submit the required affidavit or declaration from counsel. This, alone, precludes relief.") (footnote omitted).

Setting aside Rule 56(d), Plaintiff's reference to the concept of "excusable neglect" suggests she may believe the extension request is governed by Rule 6(b). There are at least two problems with this approach. First, under Rule 6(b), the "excusable neglect" standard only applies when a party seeks to extend a deadline that has already expired. In contrast, if the extension request concerns a not-yet-expired deadline, Rule 6(b) requires the movant to show "good cause." *Id.* ("When an act may or must be done within a specified time, the

court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect.”). Here, the fact discovery deadline had not yet expired at the time Plaintiff filed her response brief, so if Plaintiff’s request to extend that deadline were governed by Rule 6(b), the relevant standard would be “good cause,”[9] not “excusable neglect.”

The second problem is that Plaintiff’s extension request pertains to deadlines set forth in a scheduling order, i.e., the CMO. The request thus implicates Rule 16(b)(4), which provides that “[a] schedule may be modified only for good cause and with the judge’s consent.” Although there is not a consensus on the issue, many courts have concluded that the Rule 16(b)(4) standard supplants the Rule 6(b) standard, regardless of whether the deadline at issue has already expired, when a movant seeks to extend deadlines that were set in a CMO. 1 Gensler, Federal Rules of Procedure, Rules and Commentary, § 16:33 (June 2026 update) (“The better view is that requests to amend the scheduling order should be analyzed under Rule 16(b)’s good cause standard only. . . . [T]hough the matter is not without debate, the better interpretation of the rules scheme as a whole is that the rulemakers intended Rule 16’s standards for modifications to occupy the field. In practice, the vast majority of the cases are decided only on Rule 16(b)’s good cause standard, without any mention of Rule 6(b).”). *See also CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App’x 116, 124 & n.5 (3d Cir. 2015) (holding that the plaintiff’s “motion to reopen discovery [was] governed by Federal Rule of Civil Procedure 16(b)” and rejecting the plaintiff’s argument “that the District Court should have analyzed its motion under Rule 6(b)(1)(B),” because “the primary relief sought was the reopening of the discovery period” and “[t]hat demand place[d] the motion squarely within the ambit of Rule 16(b)”).

---

[9] The Ninth Circuit has stated, in the context of construing Rule 6(b)(1), that “good cause” is “a non-rigorous standard.” *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010). However, the Ninth Circuit has also stated, in the context of construing Rule 16(b)(4), that “good cause” is not a “liberal amendment policy,” is “not compatible” with “carelessness,” and is a “close correlate” of “extraordinary circumstances.” *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609-10 (9th Cir. 1992).

It is unnecessary here to wade into the debate over how Rules 6(b) and 16(b)(4) intersect in this scenario. As discussed below, Plaintiff has, at a minimum, failed to establish good cause for extending the CMO deadlines. That is reason enough to deny her extension request. *Cf. Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 764-65 (9th Cir. 2017) (where the District of Nevada required, by local rule, a party seeking to extend an expired deadline in a scheduling order to show both good cause and excusable neglect, concluding that the district court's determination that the movants failed to demonstrate good cause was "on its own, . . . a sufficient reason to deny Defendants' motion").

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at. "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (cleaned up). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* "If that party was not diligent, the inquiry should end." *Id.*

In a nutshell, Plaintiff offers two reasons for extending the deadlines in the CMO: (1) prior counsel (Alatorre) mismanaged the case and current counsel (Henry) is trying to rectify that mismanagement; and (2) Henry was awaiting admission to federal court.

The first reason lacks merit because it rests on the false premise that the only two attorneys whose diligence may be considered are Alatorre and Henry. But as discussed elsewhere in this order, three other attorneys from Morgan & Morgan—Jones, Leader, and Sewell—have also appeared on Plaintiff's behalf since this case was removed to federal court, and Jones was involved in the case from inception (as evidenced by the fact that he signed the original complaint filed in state court). Each attorney's conduct—or, at a minimum, each attorney's conduct from when he entered a notice of appearance until he withdrew—is thus fair game when evaluating diligence. *Cf.* LRCiv 83.3(a) ("An attorney

of record shall be deemed responsible as attorney of record in all matters before and after judgment until the time for appeal expires or until there has been a formal withdrawal from or substitution in the case.”).[10]

Beginning with Plaintiff’s deposition, Jones received a NEF through the Court’s CM/ECF system for every docket filing in this case—including the CMO and both notices of Plaintiff’s deposition. Moreover, Jones was sent at least two letters and one email from defense counsel attempting to schedule Plaintiff’s deposition. And even assuming there was some confusion regarding the first deposition date, Defendant then clearly rescheduled Plaintiff’s deposition for January 5, 2026. Plaintiff provides no explanation for why she, Jones, and Leader failed to appear for that deposition. Moreover, at no point between January 5, 2026 and March 27, 2026 (when Plaintiff, via Jones, filed her response brief to the pending motion) did Plaintiff, Jones, or Leader seek any extension of the fact discovery deadline or seek to reschedule Plaintiff’s deposition. This conduct is not diligent.

Turning next to Plaintiff’s failure to serve her initial disclosures, Jones was sent correspondence from defense counsel on three separate occasions—both before and after his formal appearance in this case—noting that Plaintiff’s initial disclosures were missing. At no point did Jones identify Alatorre’s mismanagement and seek to have deadlines extended. And even after Jones appeared in this case on December 1, 2025, he made no effort to belatedly serve initial disclosures. The same is true for Leader and Sewell. Once again, that is not diligent.

As for Plaintiff’s failure to disclose experts, Jones made an appearance in this case two weeks before the December 15, 2025 deadline to disclose experts. At no point during those two weeks did Jones provide expert disclosures or seek an extension to do so. Yet again, diligence is lacking.

Henry’s pending federal court admission also does not support a finding of diligence. If, as Plaintiff argues, she needed an extension of CMO deadlines until Henry

---

[10] To this day, Leader and Sewell remain counsel of record, and Jones only recently withdrew on July 1, 2026.

was admitted, Jones, or any of Plaintiff's other attorneys, could have and should have sought one. *Cf. Iopa v. Saltchuk-Young Bros., Ltd.*, 916 F.3d 1298, 1302 (9th Cir. 2019) ("Although Iopa's counsel noted several challenges in managing his caseload, particularly following the departure of the associate who managed this case, the Supreme Court has held that we give little weight to the fact that counsel was experiencing upheaval in his law practice.") (cleaned up).

The Court also notes that this is not the first case in which Jones has offered excuses of this sort for missed hearings and deadlines. In *Brown v. Walmart Inc.*, No. 2:24-cv-01760-GMS, Judge Snow issued an order to show cause why sanctions should not be imposed against Jones for an "apparent pattern of misconduct" that included failing to appear at hearings. (*Brown*, Doc. 65 at 1.) In one instance, Jones offered the excuse that he was under the "impression" that another Morgan & Morgan attorney was covering the hearing for him, and in another instance, Jones claimed he never received notice setting the hearing—although Judge Snow noted that an NEF was sent to Jones's email. (*Id.* at 2-3.) Judge Snow also detailed several other instances of apparent misconduct by Jones in cases before Judge Liburdi and the undersigned (in a different case than this one). (*Id.* at 4-6.) Among other things, Jones claimed in those other cases that he was "not counsel of record" (despite having formally appeared as an attorney of record) and attempted to shift blame to co-counsel who had left the firm. (*Id.* at 5.) On August 10, 2026, Judge Snow issued a further order explaining that it had recently "c[o]me to the Court's attention that Mr. Jones is involved in concurrent show cause proceedings before Judge Tuchi, arising from alleged failures to communicate with opposing counsel or participate in the discovery process. *Tolman v. Williams*, No. 25-cv-08246-JJT (D. Ariz. Nov. 18, 2025). Opposing counsel in those proceedings allege that Mr. Jones's response to Judge Tuchi's order to show cause 'downplays the severity of [the] discovery violations,' by omitting relevant context. Given this Court's concern with Mr. Jones's pattern of misconduct, his minimization of the scope and severity of that misconduct in both procedural and substantive matters, and the potential imputation of his misconduct to Morgan & Morgan Arizona, the Court will defer

its decision on appropriate sanctions in this case pending further developments in the show cause proceedings before Judge Tuchi in *Tolman*." (*Brown*, Doc. 82 at 1-2, citations omitted.)

It is unnecessary here to await resolution of the sanctions proceedings in *Brown* and *Tolman*. It suffices to say that Plaintiff was not diligent and thus has not shown good cause to extend any of the CMO deadlines.[11]

IV. Attorneys' Fees And Costs

Defendant "requests that this Court award Defendant its fees and costs incurred in defending this case." (Doc. 18 at 8.) Plaintiff does not respond. (Doc. 21.)

Under Rule 37(c)(1)(A), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . the court, on motion and after giving an opportunity to be heard . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure."

Under Rule 37(d), if "a party . . . fails, after being served with proper notice, to

[11] The Court also clarifies that although it is unnecessary (for reasons discussed elsewhere in this order) to evaluate whether Plaintiff has established excusable neglect, the Court would also find an absence of excusable neglect. *See, e.g.*, *Pioneer*, 507 U.S. at 395. Although courts may not impose *per se* rules when assessing whether a failure to act was caused by "excusable neglect," *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004), the Court has considered the four *Pioneer* factors and concludes that (1) the danger of prejudice to Defendant is great because "[t]he law presumes injury from unreasonable delay," *Hernandez v. City of El Monte*, 138 F.3d 393, 401 (9th Cir. 1998) (citation omitted), and Plaintiff's excuses for the delay are unreasonable and frivolous; (2) although the length of delay between Plaintiff's failures and her request to amend the CMO deadlines was only between three and six months, Plaintiff has still not provided Defendant with any disclosures, *Christian Daniel Rilloraza v. 7 Eleven Inc.*, 2026 WL 2032225, *2 (C.D. Cal. 2026), and at this point, the entire CMO would need to be rewritten and this case would begin anew; (3) Plaintiff's proffered reasons for the delay are frivolous and unreasonable, *see, e.g.*, *Pioneer*, 507 U.S. at 398 ("In assessing the culpability of respondents' counsel, we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date."); *Iopa*, 916 F.3d at 1301-02 (third *Pioneer* factor weighed against a finding of excusable neglect where the reason for the delay was the attorney's purported "challenges in managing his caseload, particularly following the departure of the associate who managed this case"); and (4) good faith is questionable given Jones's track record. *Cf. Steiner v. United States*, 2023 WL 4977983, *3 (E.D. Cal. 2023) ("Plaintiff has demonstrated a persistent failure to prosecute her case, beginning with her failure to provide initial disclosures until threatened with dismissal, to her failure to respond to the United States' Request for Admissions, and culminating in her failure to oppose the United States' motion to dismiss. Plaintiff's proffered reasons for delay do not outweigh the prejudice to Defendants and the general interest in finality in judgment. Thus, considering all relevant circumstances, the Court finds there is no excusable neglect . . . .").

appear for that person's deposition," "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."[12]

Under Rule 16(f), "if a party or its attorney . . . fails to obey a scheduling or other pretrial order," "the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."

Plaintiff and her attorneys failed to provide initial disclosures, failed to engage in good-faith settlement talks, failed to provide expert disclosures, failed to appear for her deposition, and otherwise violated the CMO. The violations were not substantially justified and an award of attorneys' fees and expenses would not be unjust. Accordingly, the Court will order Plaintiff's counsel to pay the reasonable expenses—including attorneys' fees—incurred by Defendant as a result of Plaintiff's violations.

…

…

…

…

..

…

…

---

[12] Rule 37(d)(1)(A)(ii) also authorizes sanctions if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." However, a party seeking sanctions based on such a failure must, under Rule 37(d)(1)(B), "include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Defendant has not complied with that requirement here—the correspondence that Defendant attaches to its motion shows that although Defendant complained about Plaintiff's failure to appear for her deposition and failure to provide initial disclosures, Defendant did not specifically attempt to meet and confer about Plaintiff's failure to respond to Defendant's written discovery requests. (Docs. 18-5, 18-8, 18-10.)

Accordingly, **IT IS ORDERED** that:

1. Defendant's motion for summary judgment, or in the alternative for dismissal under Rule 41 (Doc. 18), is **granted in part**. This action is dismissed without prejudice, and the Clerk of Court shall enter judgment accordingly.

2. Plaintiff and Defendant shall meet and confer concerning Defendant's entitlement to recover its expenses and fees under Rule 16 and/or Rule 37. If the parties cannot come to an agreement regarding the size of the fee award, Defendant shall file a motion (and supporting evidence) within 14 days of the issuance of this order. Plaintiff's response must be filed within 14 days of the motion. No reply will be permitted.

Dated this 24th day of August, 2026.

Dominic W. Lanza
United States District Judge